UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOLENE MERCADANTE and <br> CHERYL KOWALSKI, <br><br> Plaintiffs, <br><br> v. <br><br> TOWN OF AGAWAM, NANCY SIEGEL, <br> CHRISTOPHER JOHNSON and <br> WILLIAM SAPELLI, <br><br> Defendants. | Case No. 3:25-cv-30035-KAR |

MEMORANDUM AND ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT AND MOTION FOR A MORE DEFINITE
STATEMENT
(Dkt. No. 15)

ROBERTSON, U.S.M.J.

I.      Introduction

Before the court is a partial motion to dismiss filed by the Town of Agawam ("Town"), Nancy Siegel ("Ms. Siegel"), the director of the Agawam Public Library, William Sapelli ("Mr. Sapelli"), Agawam's former mayor, and Christopher Johnson ("Mr. Johnson"), the Town's current mayor (collectively, "Defendants"), seeking dismissal of certain claims stated in the Second Amended Complaint ("SAC") filed by the plaintiffs, Jolene Mercadante ("Plaintiff" or "Ms. Mercadante") and her spouse Cheryl Kowalski[1] arising from Ms. Mercadante's former employment as the library's assistant director. Plaintiff claims discrimination based on disability,

---

[1] Because the plaintiffs have not opposed so much of Defendants' motion as seeks dismissal of Ms. Kowalski's loss of consortium claims, the court will dismiss those claims. This leaves Ms. Mercadante as the sole plaintiff in this matter. Accordingly, the court refers to her either as Plaintiff or as Ms. Mercadante in this decision.

1

age, and sexual orientation as well as violations of her civil rights and various state laws. Defendants have moved to dismiss the claims against Messrs. Sapelli and Johnson in Counts VIII, IX, and X (interference with employment, contractual, and business relations), the claims against all Defendants in Count XI (negligent infliction of emotional distress), the claims in Count XII (loss of consortium), and Count XIII (interference with the Family and Medical Leave Act ("FMLA")), and the claims against the individual defendants in Count XIV (violation of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H & 11I). The parties have consented to this court's jurisdiction (Dkt. No. 21). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b). For the reasons set forth below, the court GRANTS in part and DENIES in part Defendants' partial motion to dismiss.

II.     Allegations in Plaintiffs' SAC

The allegations in Plaintiffs' SAC are accepted as true for purposes of this motion and all reasonable inferences are drawn in Plaintiff's favor. *See Langadinos v. Am. Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir. 2000).

Ms. Mercadante worked in the Agawam Public Library for 37 years (SAC ¶ 13). She was a capable employee who never received a warning or reprimand (SAC ¶ 26). Around October 10, 2003, she was promoted to assistant library director (SAC ¶ 22). In 2019, Ms. Siegel replaced Judy Clini as the library's director and Ms. Mercadante's supervisor (SAC ¶ 23).

Ms. Mercadante introduced Ms. Kowalski to Ms. Siegel as her wife and Ms. Siegel indicated that she checked out the library book that Ms. Mercadante wrote about her marriage (SAC ¶ 15). The Town's human resources ("HR") department also knew about Ms. Mercadante's marital status as individuals in the HR department discussed adding Ms. Kowalski to Ms. Mercadante's insurance and retirement account (SAC ¶ 16). During Ms. Siegal's first

week as the library's director, a staff member who planned adult programming asked Ms. Siegal if she wanted to approve the programs in advance (SAC ¶ 24). In Ms. Mercadante's presence, Ms. Siegal responded, "No need unless you're going to have drag queen storytime" (SAC ¶ 24).

In her role as assistant director, Plaintiff was involved in many aspects of the library's operation. In or around September 2021, numerous library staff members complained about mold that was causing unhealthy conditions in the library (SAC ¶ 28). Because Plaintiff and other staff members were concerned that Ms. Siegel was ignoring the safety hazard posed by the mold, on September 1, 2021, Plaintiff met with Mr. Sapelli and building maintenance personnel at the library to discuss it (SAC ¶ 28). Mr. Sapelli indicated that he had seen photos showing the conditions at the library including mold that was clearly visible in vents, on the walls and ceilings, and growing on the carpets as well as a portion of the ceiling that was collapsing (SAC ¶ 29). Mr. Sapelli told the employees to close the library at 5:00 P.M. and to keep it closed until they received test results from an industrial hygienist (SAC ¶ 28). Later, the library was relocated to the Senior Center while the mold was removed (SAC ¶ 42). Ms. Mercadante also contacted the HR department and relayed employee concerns about Ms. Siegel's failure to address the mold (SAC ¶ 30). On September 23, 2021, at HR's request, Ms. Mercadante provided documents addressing a deterioration in leadership (SAC ¶ 38). When Ms. Siegel found Ms. Mercadante's documents in a printer, she expressed concern about their ability to work together in the future (SAC ¶ 38). Ms. Siegel also identified Ms. Mercadante to a member of the maintenance staff as the person who complained about the mold despite knowing that the maintenance employee had a history of threatening behavior toward women (SAC ¶ 35(a), (b)).

Ms. Mercadante claims that after Ms. Siegel learned of her September meeting with the mayor and reports to HR, Ms. Siegel created a hostile work environment, prevented her from

3

carrying out her duties, and discriminated against her (SAC ¶¶ 31, 32, 33). Around January 4, 2022, Plaintiff emailed HR to complain about Ms. Siegel's lack of leadership and mistreatment of herself and other staff members (SAC ¶ 39). HR told Plaintiff that it would schedule a meeting between Ms. Siegel and Mr. Sapelli (SAC ¶ 39). About a month later, Ms. Siegel called Plaintiff into her office to inform her that the mayor had severely criticized Ms. Siegel during this meeting (SAC ¶ 40).

On February 22, 2022, when Ms. Mercadante met with the mayor and Jan Sapelli, the interim HR director, to discuss conditions at the library, the mayor indicated that he would be taking over as library supervisor because he was concerned about Ms. Siegel's performance (SAC ¶ 41). He directed Ms. Mercadante to tell the staff to report to him (SAC ¶ 41). According to Ms. Mercadante, the mayor and HR later permitted Ms. Siegel to read staff members' complaints about her (SAC ¶ 41). The day after Ms. Mercadante's meeting with the mayor and the interim HR director, Ms. Siegel called Ms. Mercadante and another department head into a conference room, closed the door, and discussed Ms. Mercadante's email to her and the department head addressing personnel issues and the library's dirty floors (SAC ¶¶ 35(c), 42). Ms. Mercadante found this closed-door confrontation with two department heads intimidating and frightening (SAC ¶¶ 35(c), 42). On February 28, 2022, Ms. Mercadante emailed the interim HR director to inform her that her doctor had recommended that she take time off due to the hostile work environment that Ms. Siegel had created (SAC ¶ 43). The interim director expressed sympathy for Ms. Mercadante's situation (SAC ¶ 43).

During a July 29, 2022, meeting with Ms. Siegel and other staff members, Ms. Mercadante raised issues about office maintenance (SAC ¶ 44). Ms. Mercadante expected Ms. Siegel to discuss the issues with Brian Pagella, the head of building maintenance (SAC ¶ 44).

Instead, Ms. Siegel informed the library custodian that Ms. Mercadante would clean her own office, which was contrary to protocol (SAC ¶¶ 35(d), 44). About a week later, Ms. Mercadante sought the Employee Assistance Program's ("EAP") help to address her work conditions (SAC ¶ 45). She alleges that the EAP, describing her situation as "egregious" and referring to "failed leadership," indicated that Ms. Mercadante should focus on "surviv[ing]" for three more years until she could retire and directed her to the Professional Development Team (SAC ¶ 45).

On September 1, 2022, Ms. Mercadante met with the HR director, John Fitzgerald, and described her problems with Ms. Siegel and the library's maintenance personnel (SAC ¶ 46). Mr. Fitzgerald agreed that they were retaliating against Ms. Mercadante (SAC ¶ 46). The next day, Ms. Siegel called Ms. Mercadante into her office and demanded that she sign a statement, written by Ms. Siegel, saying that she did not want any maintenance personnel in her office (SAC ¶¶ 35(e), 47). According to Ms. Mercadante, the confrontation left her very fearful (SAC ¶ 47).

In October 2022, Plaintiff began taking FMLA leave (SAC ¶ 49). Ms. Siegel put "FMLA" next to Mercadante's name on publicly posted schedules, began discussing Ms. Mercadante's retirement or resignation, and repeatedly changed or eliminated Ms. Mercadante's duties and responsibilities (SAC ¶¶ 49, 50). In a series of meetings with Ms. Siegel during November 2022, Ms. Mercadante addressed their relationship during the past year (SAC ¶¶ 51, 52, 53). Ms. Mercadante raised Ms. Siegel's lack of communication and the progressive elimination of her responsibilities as the library's assistant director (SAC ¶¶ 51-53). Ms. Siegel asked why Ms. Mercadante needed FMLA leave, and they discussed whether Ms. Mercadante's FMLA leave would interfere with her ability to perform her job (SAC ¶ 52). Ms. Mercadante

informed HR about the content of these discussions and Ms. Siegel's attempts to force her out of her job (SAC ¶ 54).

At staff meetings, Ms. Siegel expressed her disapproval of Pride displays and events and of staff attempts to start an LGBTQ+ book club (SAC ¶¶ 35(g), 55). Ms. Siegel said that Pride events or an LGBTQ+ book club might have to be approved by the mayor although other events and programs, such as Black History Month and Women's History Month, did not require mayoral approval (SAC ¶¶ 35(i), 55). Ms. Siegel said that Agawam was not like Amherst (a notably liberal community), and she did not want to start a fire in Agawam (SAC ¶ 55).

In January 2023, Ms. Siegel informed all staff members, including retirees, that Ms. Mercadante had COVID (SAC ¶¶ 35(f), 56). The next month, Ms. Siegel increased her interference with Ms. Mercadante's duties and stopped communicating with her, excluding her from meetings, including those in which library policies were discussed, while holding secret meetings with other staff members (SAC ¶¶ 33, 34). Ms. Siegel continued to insist that she needed to review and obtain mayoral approval for plans for LGTBQ+ events (SAC ¶¶ 35(h), 57, 58, 59). When one of the librarians emailed Ms. Siegel about a book order for *Gender Queer*, Ms. Siegel said she had to approve all future orders for LGBTQ+ books, although she did not routinely approve other book orders (SAC ¶ 60).

Beginning in December 2023, due to her working conditions, Ms. Mercadante began using the substantial sick leave to which she was entitled and also took FMLA leave (SAC ¶¶ 67, 70). In response to the Town's request for supporting medical information, Ms. Mercadante's physician provided more than six notes to support her use of sick leave and FMLA leave (SAC ¶¶ 68, 71). In June 2024, the Town informed Ms. Mercadante that it needed additional information from Ms. Mercadante's physician to obtain a second opinion about Ms.

Mercadante's medical condition (SAC ¶¶ 69, 71). In late July 2024, the Town informed Ms. Mercadante that she might face discipline and loss of her sick leave compensation if she did not provide the requested medical information (SAC ¶¶ 69, 75).

On August 13, 2024, after the Town received an additional note from Ms. Mercadante's doctor, the Town informed Ms. Mercadante that her sick leave compensation would end on August 23, 2024, and repeated its request for additional medical information (SAC ¶¶ 74, 77). The Town terminated Ms. Mercadante's sick leave compensation on September 12, 2024, notifying Ms. Mercadante that it had filed a claim with the Massachusetts Department of Industrial Accidents ("DIA") (SAC ¶¶ 78, 80). On October 28, 2024, the Town notified Ms. Mercadante that its workers' compensation insurer had denied the DIA claim (SAC ¶ 81).

III.     Legal Standard

"To survive a [Fed. R. Civ. P. 12(b)(6)] motion to dismiss, the well-pleaded facts in Plaintiff's complaint must 'state a claim to relief that is plausible on its face.'" *Roman v. Town of Tisbury*, Civil Action No. 20-cv-12110-IT, 2021 WL 916803, at *3 (D. Mass. Mar. 10, 2021) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In reviewing a complaint under Rule 12(b)(6), the court "must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.,* 676 F.3d 220, 224 (1st Cir. 2012)). "The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief." *Roman,* 2021 WL 916803, at *3 (citing *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011)).

IV.     Analysis

      A.      Intentional Interference with Employment, Contractual, and Business Relations as against Messrs. Sapelli and Johnson (Counts VIII, IX, and X)[2]

To state a claim for intentional interference with advantageous relations, a plaintiff must plead sufficient facts to show that: "'(1) [she] had an advantageous relationship with a third party (*e.g.*, a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.'" *Gregg v. Ne. Univ.*, 599 F. Supp. 3d 17, 26 (D. Mass. 2022) (alteration in original) (quoting *Dobelle v. Flynn*, 12 F. Supp. 3d 274, 296 (D. Mass. 2014)). "The substantive elements of tortious interference with contractual relationships and tortious interference with advantageous business relationships are substantially similar[.]" *Coyle v. Kittredge Ins. Agency, Inc.,* Civil Action No. 4:12-CV-40014-TSH, 2014 WL 1330859, at *9 (D. Mass. Mar. 28, 2014) (citing *Cavicchi v. Koski,* 855 N.E.2d 1137, 1141 (Mass. App. Ct. 2006)). "In the employment context, where 'the plaintiff sues an official of the employer, [she] must satisfy an additional element: that the supervisor acted with "actual malice."'" *Gregg,* 599 F. Supp. 3d at 26-27 (alteration in original) (quoting *Eaton v. Town of Townsend,* Civil No. 18-11824-LTS, 2022 WL 952189, *24 (D. Mass. March 30, 2022)). "'Proof of actual malice requires more than a showing of mere hostility.'" *Eaton,* 2022 WL 952189, at *24 (citation omitted). "To meet this demanding standard, [the plaintiff] must 'demonstrate that spite or malevolence, *i.e.*, a purpose unrelated to *any legitimate corporate interest*, was the *controlling*

---

[2] In their opposition to Defendants' partial motion to dismiss, Plaintiffs argue at some length that the allegations in the SAC are sufficient to support the claims against Ms. Siegel in Counts VIII, IX, and X. Defendants, however, have not moved to dismiss Counts VIII, IX, and X as against Ms. Siegel (Dkt. Nos. 15, 16).

*factor*'" in engaging in the challenged conduct. *Id.* (quoting *Alba v. Sampson*, 690 N.E.2d 1240, 1243 (Mass. App. Ct. 1998)).

As an initial matter, while Plaintiff sets forth a lengthy list of malicious acts allegedly committed by Ms. Siegel to interfere with Plaintiff's continued employment in her opposition to Defendants' partial motion to dismiss, she fails to point to any facts relevant to claims in Counts VIII, IX, and X as asserted against Mr. Sapelli or Mr. Johnson (Dkt. No. 20-1 at 13-16). To the extent Plaintiff intended to assert claims that Mr. Sapelli or Mr. Johnson interfered with her employment relationship, she has waived any such claims by failing to respond to Defendants' arguments. *See Trindade v. Grove Servs.*, Civil Action No. 19-cv-10717-ADB, 2020 WL 6566509, at *4 (D. Mass. Nov. 9, 2020) (collecting cases). There is good reason for this. Accepting the allegations in the SAC as true, Plaintiff has not alleged any facts to support a claim that either Mr. Sapelli or Mr. Johnson acted with malice to interfere with her employment relationship with the Town. According to the SAC, Mr. Sapelli responded to Ms. Mercadante's complaints about the mold in the library and Ms. Siegel's lack of leadership by closing the library and assuming Ms. Siegel's responsibilities as the library supervisor (SAC ¶¶ 28, 29, 41). The complaint fails to allege any relevant act by Mr. Johnson and there are no allegations that either he or Mr. Sapelli participated in terminating Ms. Mercadante's sick leave payments (SAC ¶¶ 67-81). With no facts alleged that would support a reasonable inference that Mr. Sapelli or Mr. Johnson acted with improper means or motive toward Plaintiff to interfere with her employment relationship, *see Dick v. Wood Hole Oceanographic Inst.,* Case No. 21-cv-10007-DJC, 2021 WL 3146049, at *8 (D. Mass. July 26, 2021), all of the intentional interference claims fail as to these two defendants. Thus, the court will dismiss Counts VIII, IX, and X as against Messrs. Sapelli and Johnson.

9

B.     Negligent Infliction of Emotional Distress (Count XI)

The Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, § 2, "authorizes certain negligence actions against public employers, [and] simultaneously 'shields public employees from personal liability for negligent conduct.'" *Canales v. Gatzunis*, 979 F. Supp. 2d 164, 174 (D. Mass. 2013) (quoting *Caisse v. DuBois,* 346 F.3d 213, 218 (1st Cir. 2003)). Under the MTCA, individual defendants cannot be personally liable for negligent acts, including acts that negligently inflict emotional distress, if those acts are performed in the scope of the individual defendants' employment. *See, e.g., Opalenik v. LaBrie*, 945 F. Supp. 2d 168, 196 (D. Mass. 2013). The SAC does not allege that any of the individual defendants acted outside of the scope of his or her employment. Count XI of the SAC, therefore, fails to state claims as to the individual defendants (Dkt. No. 16 at 4-5).

Defendants further argue that the Massachusetts Workers' Compensation Act, Mass. Gen. Laws ch. 152 ("MWCA"), bars Ms. Mercadante's claims of negligent infliction of emotional distress against all Defendants because, under the exclusivity provision of the MWCA, an employee waives her common law right of action to recover damages from her employer and her coworkers for personal injuries that are compensable under § 26 of the act. Mass. Gen. Laws ch. 152, § 24. An injury is compensable under § 26 "'where the plaintiff is an employee who suffers a "personal injury" [within the MWCA's meaning] that arises "out of and in the course of his employment."'" *Luu v. Fallon Serv., Inc.*, 250 N.E.3d 1159, 1167 (Mass. App. Ct. 2025) (quoting *Saab v. Mass. CVS Pharmacy, LLC*, 896 N.E.2d 615, 619-20 (Mass. 2008)). *See Green v. Wyman-Gordon Co.,* 664 N.E.2d 808, 813 (Mass. 1996); Mass. Gen. Laws ch. 152, § 26. If an employee's work-related injury is compensable under § 26 of the act, the exclusivity provision precludes any other remedies against the employer and co-employees. *See Saab,* 896 N.E.2d at

620; *Brown v. Nutter, McClennen & Fish*, 696 N.E.2d 953, 956 (Mass. App. Ct. 1998) (holding that the MWCA provides the exclusive remedy for an injured employee alleging injury caused by the tortious conduct by a coemployee that is committed in the course of the coemployee's employment) (citing cases)); Mass. Gen. Laws ch. 152, § 24.

Plaintiff claims that she suffered emotional distress as a result of Ms. Siegel's alleged hostile actions in Ms. Siegel's capacity as Plaintiff's supervisor (SAC ¶¶ 31, 32, 33, 34, 43, 47, 145-48). Because "mental distress arising out of [such an] employment relationship is a personal injury compensable under the workers' compensation act," *Felinska v. New England Teamsters & Trucking Indus. Pension Fund*, 855 F. Supp. 474, 478 (D. Mass. 1994) (citing *Foley v. Polaroid Corp.,* 413 N.E.2d 711, 714 (Mass. 1980)), the MWCA provides the exclusive remedy for Ms. Mercadante's negligent infliction of emotional distress claim. *See Brader v. Biogen Inc.,* 362 F. Supp. 3d 25, 45 (D. Mass. 2019) (precluding plaintiff's negligent infliction of emotional distress claim that arose from "the treatment of his supervisors" in the course of his employment); *Lavalley v. Quebecor World Book Servs. LLC,* 315 F. Supp. 2d 136, 149 (D. Mass. 2004) (same); *Green,* 664 N.E.2d at 813-14 (same); Mass. Gen. Laws ch. 152, § 24. That Ms. Mercadante's workers' compensation claim was denied does not alter that determination (SAC ¶ 81). *See Crews v. Memorex Corp.,* 588 F. Supp. 27, 30 (D. Mass. 1984) ("When an injury is within the class of those covered by the workmen's compensation statute, but no compensation is available because the injury is not disabling as defined in the statute, the exclusivity provision nonetheless bars a tort suit against the employer."); *Saab,* 896 N.E.2d at 617, 620 ("[T]he determination whether an employee's injury is compensable under the act – and thus whether the exclusivity provision, § 24, applies – does not turn on whether a claimant is entitled to or actually receives compensation under the act.").

In opposition to Defendants' partial motion to dismiss, Ms. Mercadante seeks to reframe her claim as one of intentional infliction of emotional distress (Dkt. No. 20-1 at 16-17). Plaintiff's opposition to Defendants' request for dismissal of the negligent infliction of emotional distress claim maintains that the claim is not barred by the MWCA because "the intentional infliction of emotional distress as a result of Defendants' conduct is not the type of injury precluded by the [MWCA]" (Dkt. No. 20-1 at 16-17). While it is true that the MWCA does not preclude certain intentional infliction of emotional distress claims, *see, e.g. Spagnuolo v. Holzberg*, 158 N.E.3d 496, 502 (Mass. App. Ct. 2020), "[t]he [c]ourt rules on the Motion to Dismiss based on the content of the [c]omplaint, not on new assertions made for the first time in response to the motion." *Goodrow v. Everhome Mortg.*, C.A. No. 13-580-M, 2015 WL 1879632, at *2 (D.R.I. Apr. 23, 2015). The SAC asserts a claim clearly identified as being for negligent infliction of emotional distress (SAC at 19). If Ms. Mercadante has a good faith basis for asserting a claim of intentional infliction of emotional distress against one or more of the defendants, she may file a motion for leave to amend the complaint, subject to Defendants' right to oppose any such motion. Plaintiff, however, is not entitled to amend the operative complaint by means of an opposition to Defendants' partial motion to dismiss. *See Fraser v. Mass. Bay Transp. Auth.*, 544 F. Supp. 3d 148, 166 n.12 (D. Mass. 2021) (citing *Driscoll v. Simsbury Assocs., Inc.*, Civil Action No. 17-cv-12373-ADB, 2018 WL 2139223, at *5 n.3 (D. Mass. May 9, 2018)).

The negligent infliction of emotional distress claims in Count XI will be dismissed as to all Defendants.

    C.    Ms. Kowalski's Loss of Consortium Claim (Count XII)

The MTCA requires that a party seeking tort damages against a public employer "shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . . ." Mass. Gen. Laws ch. 258, § 4. Defendants move to dismiss Count XII, Ms. Kowalski's claim for loss of consortium, because Plaintiffs have not alleged that they submitted a separate presentment letter for that claim (Dkt. No. 16 at 8-9). Defendants' contention about the effect of such a failure is well-supported. *See Monderer v. City of Newton,* No. 013491, 2002 WL 388209, at *2 (Mass. Super. Ct. Jan. 7, 2002) ("a separate presentment letter is required for a loss of consortium claim."); Mass. Gen. Laws ch. 258, § 4; *see also Koran v. Weaver,* 482 F. Supp. 2d 165, 171 (D. Mass. 2007) (dismissing loss of consortium claims that were not properly presented in plaintiff's presentment letter). Here, Plaintiffs have not responded to Defendants' contention that this claim should be dismissed for failure to comply with the MTCA. Thus, they have waived the right to pursue this claim. *See Trindade*, 2020 WL 6566509, at *4 (quoting *Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 217 (D. Mass. 2018)); *see also Peterson v. E. Boston Sav. Bank*, CIVIL ACTION NO. 17-11776-GAO, 2018 WL 4696746, at *2 (D. Mass. Sept. 29, 2018). For this reason, Count XII will be dismissed.

      D.      Interference with Plaintiffs' Rights Under the FMLA (Count XIII)

Plaintiffs also have failed to oppose so much of Defendants' motion as seeks dismissal of Plaintiff's claim that Defendants interfered with her rights under the FMLA. Accordingly, Plaintiff has also waived her right to pursue an FMLA claim and this claim will be dismissed (Dkt. No. 16 at 9-11; Dkt. No. 20-1). *See Trindade,* 2020 WL 6566509, at *4 (quoting *Mahoney*, 342 F. Supp. 3d at 217).

      E.      Violations of the Massachusetts Civil Rights Act (Count XIV).

13

"To establish a claim under the . . . MCRA . . . , [Mass. Gen. Laws ch.] 12, §§ 11H-11I, 'a plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion.'" *Gallagher v. S. Shore Hosp., Inc.*, 197 N.E.3d 885, 904 (Mass. App. Ct. 2022) (quoting *Currier v. Nat'l. Bd. of Med. Exam'rs*, 965 N.E.2d 829, 837-38 (Mass. 2012)).  Solely for purposes of this motion, Defendants do not dispute that Ms. Mercadante's continued employment at the library was a protected interest and that Ms. Mercadante has sufficiently alleged that Defendants interfered or attempted to interfere with that interest (Dkt. No. 16 at 11-16).  *See Thomas v. Harrington*, 909 F.3d 483, 492-93 (1st Cir. 2018). Defendants argue, however, that Ms. Mercadante has not alleged that they engaged in threats, intimidation, or coercion as is required to state a MCRA claim (Dkt. No. 16 at 11-16).

Under the MCRA,

> "[t]hreat" . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.  "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. . . . [C]oercion . . . [is] "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."

*Planned Parenthood League of Mass., Inc. v. Blake*, 631 N.E.2d 985, 990 (Mass. 1994) (citations omitted).  "Whether conduct amounts to threats, intimidation, or coercion is assessed under an objective, 'reasonable person' standard." *Salmon v. Lang*, 57 F.4th 296, 316–17 (1st Cir. 2022) (quoting *Planned Parenthood,* 631 N.E.2d at 990-91).  "Non-physical coercion rarely supports a basis for recovery under the MCRA." *Id.* (citing *Thomas,* 909 F.3d at 492-93).  "Where it has, 'Massachusetts courts have required "a pattern of harassment and intimidation."'" *Id.* (quoting *Thomas*, 909 F.3d at 492-93).  Courts addressing MCRA claims have held that evidence of a pattern of harassment aimed at pressuring a public employee to resign when he or she would not

otherwise have done so presents a case for resolution by a factfinder.  In *Broderick v. Roache,* 803 F. Supp. 480 (D. Mass. 1992), the court denied summary judgment where the defendants employed a scheme of harassment and retaliation that included "denying him a promotion to which he was entitled, . . . refusing to grant him permission to practice law in his off-duty hours, and . . . subjecting him to unjustified disciplinary proceedings" to get him to give up his job.  *Id.* at 482-83, 487.  Similarly, in *Howcroft v. City of Peabody,* 747 N.E.2d 729 (Mass. App. Ct. 2001), the court denied summary judgment on the plaintiff's MCRA claims against several senior police officials who, in response to the plaintiff's complaints about a deliberate refusal to comply with anti-smoking laws, harassed the plaintiff, who had sinus problems, by blowing smoke in his face, ordering him to shut up when he sought to enforce the public building smoking ban, relocated his workspace to increase his exposure to smoke, and suspended him from work on numerous occasions without legitimate justification.  *Id.* at 746.  Based on the evidence, the court found that the plaintiff "presented a triable issue whether the defendants attempted to silence him by concerted harassment and retaliation amounting to prohibited intimidation."  *Id.* (citing *Planned Parenthood,* 631 N.E.2d at 990).

      The SAC alleges facts that, viewed in the light most favorable to Ms. Mercadante, could support a finding that Ms. Siegel engaged in harassment and retaliation against Ms. Mercadante over an extended period of time that was similar to the events that supported the claims found sufficient in *Broderick* and *Howcroft*.  According to Ms. Mercadante, Ms. Siegel expressed hostility towards LGTBQ+ individuals and activities in Ms. Mercadante's presence, repeatedly reduced her job responsibilities and authority when she spoke up about, and took steps to address, a health hazard in the library and complained about Ms. Siegel's performance, and communicated an unwillingness to continue working with Plaintiff.  Further, Ms. Siegel publicly

15

disclosed confidential information about Ms. Mercadante's health to others, criticized her medical leaves of absence, and advocated for Ms. Mercadante's retirement or resignation. Ms. Mercadante has sufficiently alleged that Ms. Siegel violated the MCRA by engaging in a prolonged campaign of harassment and retaliation aimed at silencing Ms. Mercadante's criticism and forcing her to resign. Such allegations are sufficient to meet the requirement for threats, intimidation, or coercion under the MCRA. *See Blasko v. Doerpholz,* Case No. 15-cv-30185-MGM, 2016 WL 11189804, at *7 (D. Mass. Aug. 22, 2016) (holding that defendants' alleged attempts to "pressure an emotionally fragile employee into leaving the workplace" by withholding work assignments and precluding him from performing his routine duties were part of a pattern of coercive behavior that violated the MCRA). Therefore, Defendants' motion to dismiss Count XIV is denied as to Ms. Siegel.

As to Messrs. Sapelli and Johnson, the SAC does not allege any interactions between either of them and Plaintiff that could be characterized as threatening, intimidating, or coercive. Plaintiffs allege that the HR director, Mr. Fitzgerald, wrongly terminated Ms. Mercadante's sick leave compensation, but he is not a named defendant, and the SAC does not allege that either Mr. Sapelli or Mr. Johnson was involved in the decision to terminate Plaintiff's compensation (SAC ¶¶ 67-81; Dkt. No. 16-1 at 2-3; Dkt. No. 16-2 at 2). Consequently, Count XIV will be dismissed as to Messrs. Sapelli and Johnson.

V.  Motion for a More Definite Statement

Defendants' motion for a more definite statement asks that Plaintiffs be required to identify the defendants as to whom each count in the SAC is asserted. Plaintiffs have agreed to dismiss certain claims and have not opposed dismissal of others. The court's rulings herein will result in the dismissal of some additional claims against the defendants identified herein.

Because the SAC sufficiently identifies the defendants against whom the remaining claims are asserted, this aspect of Defendants' motion has become moot.

VI. Conclusion

For the reasons set forth above and based on the plaintiffs' agreement to dismiss certain claims, Defendants' Partial Motion to Dismiss Plaintiffs' Second Amended Complaint and Motion for a More Definite Statement (Dkt. No. 15) is granted in part as set forth below and found as moot insofar as the defendants moved for a more definite statement.

Count I (Violation of the American Disabilities Act): dismissal is granted as to the individual defendants.

Count III (Violation of the Age Discrimination in Employment Act): dismissal is granted as to the individual defendants.

Count VII (Retaliation under Mass. Gen. Laws ch. 151B): dismissal is granted as to the Town.

Counts VIII, IX, and X (Intentional Interference with Employment, Contractual, and Business Relations): dismissal is granted as to the Town and Messrs. Sapelli and Johnson.

Count XI (Negligent Infliction of Emotional Distress): dismissal is granted as to all Defendants.

Count XII (Loss of Consortium): dismissal is granted as to all Defendants.

Count XIII (Interference with the FMLA): dismissal is granted as to all Defendants.

Count XIV (Violation of the MCRA): dismissal is denied as to Ms. Siegel and granted as to Messrs. Sapelli and Johnson.

It is so ordered.

Date: December 18, 2025                                    /s/ Katherine A. Robertson
                                                          KATHERINE A. ROBERTSON

                                        U.S. MAGISTRATE JUDGE